IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER FINN et al.,                          *

    Plaintiffs,                                      *

v.                                                         *          Civil Action No. GLR-23-2107

THE HUMANE SOCIETY OF THE              *
UNITED STATES,
                                      *

    Defendant.

                            ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant The Humane Society of the United States' ("Humane Society") Motion to Dismiss (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the motion.

## I.      BACKGROUND

### A.    <u>Factual Background</u>[1]

Plaintiffs Jennifer Finn and Katherine Muldoon were employed as remote workers at the Humane Society. (Compl. ¶ 1, ECF No. 1). On November 10, 2021, in response to the COVID-19 pandemic, the Humane Society announced a company-wide COVID-19 vaccine mandate for all employees, including remote workers. (<u>Id.</u> ¶ 18). Employees who remained unvaccinated after January 3, 2022 would be terminated, subject to limited exemptions for religious or medical reasons. (<u>Id.</u> ¶¶ 18–19).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Finn and Muldoon each submitted religious exemption requests, which were denied. (Id. ¶¶ 20, 25, 32, 37). In her religious exemption request, Finn explained that "Catholic teachings aligning with her faith . . . would be betrayed by getting vaccinated against COVID-19." (Id. ¶ 21). Finn wrote in her request, "My conscience and heart are guided by my faith in God the Father and his son Jesus Christ. The HSUS policy would unjustly force me to act in betrayal to my conscience and faith." (Id.). The Humane Society contacted Finn regarding her request to ask whether she was willing to engage in other disease mitigation efforts such as masking and testing, and she responded affirmatively. (Id. ¶ 22). The Humane Society interviewed Finn twice about her religious beliefs before denying her request and warning her that if she failed to comply with the vaccine mandate, her employment would be terminated on January 3, 2022. (Id. ¶¶ 24, 25). When Finn failed to comply, the Humane Society terminated her employment on January 3, 2022. (Id. ¶ 28).

Muldoon explained in her religious exemption request that she objected to the use of aborted fetal cells in the vaccine's production: "[a]ccepting this vaccine would compromise the religious beliefs founded in my Christian upbringing that fetuses are individuals and did not consent to the use of their bodies in medical testing or production . . . taking this vaccine would make me complicit in an act that offends my spiritual and religious faith." (Id. ¶ 33). When contacted by the Humane Society regarding whether she was willing to engage in other disease mitigation efforts such as masking and testing, Muldoon responded that she was willing to do so. (Id. ¶ 34). After interviewing Muldoon about her religious beliefs, the Humane Society denied her exemption request and warned her that if she failed to comply with the vaccine mandate, her employment

would be terminated on February 7, 2022. (Id. ¶¶ 36, 37). When Muldoon failed to comply, the Humane Society terminated her employment on February 7, 2022. (Id. ¶ 40).

Finn and Muldoon allege that the Humane Society did not allow them to appeal the religious exemption denials or explore alternative accommodations for remote workers. (Id. ¶¶ 25–27, 37–39). Finn and Muldoon believe that "to the extent [the Humane Society] granted any religious exemption requests, it did so arbitrarily." (Id. ¶¶ 25, 37).

**B.** **Procedural History**

On February 18, 2022, Finn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 12). In the charge, Finn identified religion and disability as the bases of discrimination. (Id.). The EEOC issued a Right to Sue Letter on May 24, 2023. (Id. ¶ 13). On February 25, 2022, Muldoon filed a charge of discrimination with the EEOC alleging unlawful religious discrimination and unlawful disability discrimination. (Id. ¶ 15). The EEOC issued a Right to Sue Letter on July 19, 2023. (Id. ¶ 16).

Finn and Muldoon filed this action on August 4, 2023. (ECF No. 1). They make the following claims: religious discrimination under Title VII of the Civil Rights Act of 1964 (Count I) and disability discrimination under the Americans with Disabilities Act ("ADA") for unlawful medical examination or inquiry (Count II) and for discrimination against them based on their perceived disabilities (Count III). (Compl. ¶¶ 44–72).

Finn and Muldoon seek injunctive relief reinstating them to their former positions or similar positions, for the Humane Society to be "enjoined from further illegal discriminatory acts," compensatory damages, punitive damages, and attorney's fees. (Id.

at 24–25). [2] The Humane Society filed the instant Motion to Dismiss on November 15, 2023. (ECF No. 14). Finn and Muldoon filed an Opposition on November 28, 2023, (ECF No. 15), and the Humane Society filed a Reply on December 19, 2023, (ECF No. 18).

## II.     DISCUSSION

### A.     Standard of Review

### 1.     Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

---

[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

**C.**     **<u>Analysis</u>**

**1.     Religious Discrimination**

Title VII prohibits religious discrimination and generally requires employers to accommodate employees' religious beliefs unless accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 2000e-2(a)(1), e(j). The statute defines religion to "include[ ] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." <u>Id.</u> § 2000e(j). There are two theories for asserting religious discrimination claims: disparate treatment and failure to accommodate. <u>Brennan v. Deluxe Corp.</u>, 361 F.Supp.3d 494, 505 (D.Md. 2019). The Court will address whether Finn and Muldoon have stated a claim under each theory.

A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Id. (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Finn and Muldoon's claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, Finn and Muldoon must eventually put forth a prima facie case showing that the Humane Society terminated them under circumstances giving rise to an inference of unlawful discrimination. See id. at 802. The precise formulation of the required prima facie case showing will vary in "differing factual situations," id. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Finn and Muldoon succeed in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004).

If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

The Court is mindful that a Title VII plaintiff need not satisfy all the elements to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558.

### a.    Failure to Accommodate

An employer has a general duty "to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008); see 42 U.S.C. § 2000e(j). In a failure to accommodate case, the plaintiff establishes a prima facie claim by showing: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he

or she was disciplined for failure to comply with the conflicting employment requirement." Id. If the plaintiff succeeds in establishing a prima facie case, "the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." Id. (cleaned up).

The Humane Society does not dispute the latter two elements. The Humane Society argues that Finn and Muldoon have failed to establish the first element because neither has alleged the specific nature of their religious beliefs. (Mem. L. Supp. Def.'s Mot. Dismiss Pls.' Compl. ["Mot."] at 5–8, ECF No. 14-1). In determining whether Finn and Muldoon have bona fide religious beliefs that conflict with the Humane Society's vaccination requirement, the Court must determine whether the "purported beliefs are both (1) 'sincerely held' and (2) 'religious' in nature." Shigley v. Tydings & Rosenberg LLP, No. JKB-23-02717, 2024 WL 1156613, at *3 (D.Md. Mar. 18, 2024) (quoting Ellison v. Inova Health Care Servs., No. 23-00132 (MSN/LRV), 2023 WL 6038016, at *4 (E.D.Va. Sept. 14, 2023).

Both Finn and Muldoon have adequately alleged that their beliefs are sincerely held, as there is no reason to assume from the face of their Complaint that their "beliefs have been concocted for litigation or are otherwise disingenuous." Shingley, 2024 WL 1156613, at *3 (quoting Ellison, 2023 WL 6038016, at *4). However, neither Finn nor Muldoon have adequately pled that their beliefs are "religious" in nature, and thus neither can make out a prima facie claim of religious discrimination.

To determine whether beliefs are "religious" in nature, the Court must discern "whether the beliefs are based on a system that is recognizably a religious 'scheme of

things,' rather than secular morality or personal health, convenience, preference, or whim."
Shingley, 2024 WL 1156613, at *3 (quoting Welsh v. United States, 398 U.S. 333, 339
(1970)). "[B]eliefs amounting to a declaration that an employee has the right to make
unilateral decisions do not constitute religious beliefs, even where religion is expressly
invoked in communicating the beliefs." Foshee v. AstraZeneca Pharms. LP, No. CV SAG-
23-00894, 2023 WL 6845425, at *4 (D.Md. Oct. 17, 2023); see Dachman v. Shalala, 9
F.App'x 186, 192 (4th Cir. 2001) ("While an employer has a duty to accommodate an
employee's religious beliefs, [it] does not have a duty to accommodate an employee's
preferences.").

Here, both Finn and Muldoon have failed to adequately plead that their objections
to the COVID-19 vaccine were based on religious beliefs. As to Finn, she does not identify
if she subscribes to any particular religion or the specific nature of any religious beliefs.
See Menk v. Mitre Corp., Civ. No. 23-00053-JRR, 2024 WL 327087, at *18 (D.Md. Jan.
29, 2024) (holding that plaintiffs failed to establish that their objections to a vaccine
mandate were based on religion when they "fail[ed] to allege what religion they practice
or what subjective religious beliefs they maintain"). Though Finn states that Catholic
teachings "align with her faith," she does not state that she identifies as Catholic nor does
she provide any specifics regarding what beliefs make up her "faith." (Compl. ¶ 21). In her
religious exemption request, she wrote that her "conscience and heart are guided
by . . . faith in God the Father and his son Jesus Christ" and that the Humane Society's
policy would "force [her] to act in betrayal to [her] conscience and faith." (Id.; Finn

Religious Exemption Request at 1, ECF No. 1-3).[3] Her entire religious exemption request is essentially a statement that her religion requires that she listen to her conscience and act according to personal preference. As this Court wrote when considering a similar belief, this "conscience-based justification could be used to evade any job requirement that [Plaintiff] disagreed with." Foshee, 2023 WL 6845425, at *4. Finn's beliefs confer exactly the unverifiable "'blanket privilege' that courts cannot permit to be couched as religious in nature." Id. at 5 (quoting Ellison, 2023 WL 6038016, at *5). Accordingly, Finn fails to establish that her beliefs are "religious" and cannot make out a prima facie case of religious discrimination.

Similarly, Muldoon does not allege that she subscribes to a particular religion nor does she state what her religious beliefs are. Though Muldoon references her Christian upbringing, she does not allege what religious beliefs she holds now. (Compl. ¶ 33; Muldoon Religious Exemption Request at 1, ECF No. 1-5). Rather, Muldoon states that she holds a "sincere spiritual belief that every person has autonomy over their body." (Muldoon Religious Exemption Request at 1). As explained above, beliefs based on

---

[3]   While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the religious exemption requests are attached to the Complaint. Accordingly, the Court will consider these documents.

personal preference cannot establish a sincere religious objection under Title VII because they would amount to a "blanket privilege" with no principled limitation in scope. <u>See Ellison</u>, 2023 WL 6038016, at *5 (rejecting plaintiff's objection to vaccination on the basis of "the God-given requirement [to] protect the physical integrity of his body" as not religious in nature). Muldoon additionally alleges that "the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals . . . go[es] against her spiritual and religious beliefs." (Compl. ¶ 33). To the extent Muldoon alleges a present religious opposition to abortion, courts have held that such opposition is distinct from an opposition to "vaccines that were potentially developed using a fetal cell line." <u>Kiel v. Mayo Clinic Health Sys. Se. Minn.</u>, Civ. Nos. 22-1319, 22-1327, 22-1405, 22-1420, 22-1427, 2023 WL 5000255, at *7–9 (D.Minn. Aug. 4, 2023). Muldoon does not explain how her opposition to the vaccine itself is tied to any religious belief. <u>See Winans v. Cox Auto., Inc.</u>, 669 F.Supp.3d 394, 401 (E.D.Pa. 2023) (holding that plaintiff's objection to the use of fetal cell lines in the development of COVID-19 vaccine does not amount to a religious belief). As such, Muldoon has failed to allege how her objections to the COVID-19 vaccination are religious in nature and cannot make out a prima facie case of religious discrimination.

### b.    Disparate Treatment

In a disparate treatment case, the elements of a prima facie case of discrimination under Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." <u>Brennan</u>, 361 F.Supp.3d at 506. Importantly, "an

11

employee must demonstrate that the employer treated [her] differently than other employees because of [her] religious beliefs." Id. at 507. In support of her claim, the plaintiff might allege "that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." Id.

Finn and Muldoon have failed to state disparate treatment claims because they do not satisfy the first or fourth elements. Regarding the first element, Finn and Muldoon have not shown membership in a protected class. As discussed above, neither Finn nor Muldoon state what religion, if any, they proscribe to. As to the fourth element, Finn and Muldoon have failed to show that the Humane Society treated them differently than other employees on the basis of religion. Finn and Muldoon do not allege that other employees of a different religion, or no religion, received more favorable treatment from the Humane Society. See Brennan, 361 F.Supp.3d at 507. Accordingly, to the extent they assert religious discrimination claims on the basis of disparate treatment, those claims must fail. The Court will grant the Humane Society's Motion to Dismiss as to Count I.

### 2.      ADA Discrimination

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To state a claim for disability discrimination, a complaint must allege that (1) the plaintiff was disabled, (2) he was a qualified individual, and (3) 'he suffered an adverse employment action based on his disability.'" Leggo v. M.C. Dean, Inc., No. 122CV374LMBIDD, 2023 WL 1822383, at *4 (E.D.Va. Feb. 7, 2023), aff'd, No. 23-1211, 2023 WL 4700998 (4th Cir. July 24, 2023)

(quoting Hice v. Mazzella Lifting Techs., 589 F.Supp.3d 539, 547 (E.D.Va. 2022)). The

ADA defines disability as:

> (A) a physical or mental impairment that substantially limits
> one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). Finn and Muldoon bring two ADA-based claims: unlawful medical

examination or inquiry and a "regarded as" claim. (Compl. at 16–24). The Humane Society

argues that each claim must be dismissed as frivolous. (Mot. at 9–11). At bottom, the Court

agrees with the Humane Society.[4]

### a.  Unlawful Medical Examination or Inquiry

Finn and Muldoon argue that the Humane Society violated the ADA by inquiring

about their vaccination status. (Compl. at 16–20). 42 U.S.C. § 12112(d)(4)(A) and 29

C.F.R. § 1630.13(b) make it unlawful for an employer to require a medical examination or

make inquiries as to whether an employee is an individual with a disability or as to the

nature or severity of such disability, unless such examination or inquiry is shown to be job-

related and consistent with business necessity. It is well settled that an inquiry about

---

[4] The Humane Society also requests that this Court award it fees and costs in connection with defending the ADA claims. (Mot. at 12). The Fourth Circuit has warned that, "[a]s a general matter, dismissal of a frivolous [civil rights] case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort." Blue v. U.S. Dept. of the Army, 914 F.2d 525, 535 (1990). "An award of legal fees is appropriate in a civil rights action only in extraordinary circumstances." Liimonti v. Baltimore Cnty., Md., No. RDB-04-529, 2005 WL 1241903, at *2 (D.Md. May 25, 2005) (quoting Goldstein v. Costco Wholesale Corp., 337 F.Supp.2d 771, 774 (E.D.Va.2004)). At this stage, the Court finds that dismissal of this action is sufficient, and the Humane Society has not alleged the extraordinary circumstances that would give rise to an award of attorney fees.

vaccination status does not constitute a medical examination or an inquiry about a disability or disabling condition. See e.g., Foshee, 2023 WL 6845425, at *6 ("[B]oth vaccinated and unvaccinated people are able to perform their work and engage in major life activities without impairment or limitation. Thus, an inquiry about vaccination status does not implicate any disability"); Jorgenson v. Conduent Transp. Solutions, Inc, No. SAG-22-01648, 2023 WL 1472022, at *5 (D.Md. Feb. 2, 2023), aff'd, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) (holding that defendant's vaccination disclosure requirement "did not constitute a medical examination or an inquiry about a disability or disabling condition"); Friend v. AstraZeneca Pharms. LP, No. SAG-22-03308, 2023 WL 3390820, at *5 (D.Md. May 11, 2023) (dismissing medical examination or inquiry claim because the defendant's "inquiry about vaccination status [ ] did not constitute a medical examination or an inquiry about a disability or disabling condition"); Menk, 2024 WL 327087, at *23 (same) (citing cases).

The EEOC has confirmed that inquiries about COVID-19 vaccination status do not constitute a medical examination or inquiry about a disability or disabling condition:

> When an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply.

EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, at K.9, https://www.eeoc.gov/wysk/what-you-should-know-about-

covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K. As Finn and Muldoon cannot plausibly allege that the Humane Society violated the ADA by inquiring about their vaccination status, Count II of the Complaint will be dismissed with prejudice.

### b.   Regarded as Disabled

Finn and Muldoon additionally allege that the Humane Society regarded them as disabled because of their unvaccinated status and discriminated against them on this basis in violation of the ADA. (Compl. at 21–24). To state an ADA claim on the basis that the employer "regarded [the plaintiff] as having a disability," a plaintiff must allege "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

This Court has repeatedly held that a person's status as unvaccinated does not support a "regarded as" claim under the ADA. See, e.g., Shigley, 2024 WL 1156613, at *6 ("As far as the Court is aware, every court to have considered this issue has reached the same conclusion, that a person's unvaccinated status does not mean that they are 'regarded as' disabled for the purposes of the ADA"); Foshee, 2023 WL 6845425, at *5 ("vaccination status stems from a personal choice, not from a physical or mental impairment"); Jorgenson, 2023 WL 1472022, at *4 ("vaccination status is . . . not an impairment or an impediment to work-related tasks").

Finn and Muldoon fail to allege any facts that indicate the Humane Society regarded them as having a physical or mental impairment. Plaintiffs have alleged that they were societally impaired because their unvaccinated status limited their ability to engage in

certain social activities, but such social limitations do not support a regarded as claim. <u>See</u> <u>Shigley</u>, 2024 WL 1156613, at *6 ("the limitations placed on unvaccinated individuals do not give rise to an inference that such individuals were 'regarded as' disabled for the purposes of the ADA"); <u>see also</u> <u>Friend</u>, 2023 WL 3390820, at *4–5 (stating that societally imposed limitations "are caused by societal rules, not by the vaccination status of those subject to those rules . . . [a]nd vaccination status stems from a personal choice, not from a physical or mental impairment."). Because Finn and Muldoon cannot allege that their vaccination status caused them to be regarded as disabled, Count III must be dismissed with prejudice.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss (ECF No. 14). A separate Order follows.

Entered this 24th day of April, 2024.


_____/s/_____
George L. Russell, III
United States District Judge